**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KERTIA WALTON MYER,
<u>Plaintiff-Appellant,</u>

v.

THOMAS C. YOUNCE, in his position
as Assistant Chief of Police for the
East Carolina University Police
Department; THERESA CROCKER,
Chief of Police, in her official
capacity as the Chief of Police for
East Carolina University; EAST
CAROLINA UNIVERSITY, a duly formed
University existing under the laws
for the State of North Carolina,
<u>Defendants-Appellees,</u>

No. 99-1302

and

JOHN TAYLOR, individually and in
his position as Assistant Chief of
Police for the East Carolina
University Police Department;
MARY ANN ROSE, Doctor, Assistant
to the Chancellor at East Carolina
University for Special Assignments
and Equal Employment Opportunity
Officer, individually and in her
capacity as Equal Employment
Opportunity Officer for East
Carolina University,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-97-367-5-BR)

Argued: November 30, 1999

Decided: January 24, 2000

Before WILKINS and NIEMEYER, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Peter Voerman, New Bern, North Carolina, for
Appellant. Celia Grasty Lata, Assistant Attorney General, NORTH
CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Caro-
lina, for Appellees. **ON BRIEF:** Michael F. Easley, Attorney General
of North Carolina, Sylvia H. Thibaut, Assistant Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Kertia Walton Myer[1] appeals a district court order granting sum-
mary judgment against her on her claims of sexual harassment, con-

_____

[1] Kertia Walton took the name Myer when she married in December
1995. For ease of reference, we will refer to her as Myer throughout the
opinion.

structive discharge, and retaliation.**2** <u>See</u> 42 U.S.C.A. §§ 2000e-2(a)(1), 2000e-3(a) (West 1994). Concluding that the district court correctly decided the issues before it, we affirm.

I.

The facts, viewed in the light most favorable to Myer, are as follows. In the spring of 1995, Myer was a student at East Carolina University (ECU) and was employed as a part-time dispatcher for the ECU Police Department (the Department). Myer worked only when the full-time dispatchers were on leave. From the time that Myer began employment with the Department in 1993 until April 1995, she generally worked two eight-hour shifts per week, and occasionally a twelve-hour day. These hours were reduced in April 1995, however, after a new full-time dispatcher began employment with the Department. When her hours were reduced, Myer, who was also involved in a work-study program with the Department, was informed that she could continue to work the same hours she had been working by increasing her work-study hours. Myer chose not to do so, however.

In late March 1995, Myer, in the course of her Department duties, brought some papers to the office of Assistant Chief of Police John Taylor. While Myer was in his office, Taylor kissed Myer and fondled her breasts and buttocks. Myer rebuffed Taylor's advances and left.

Approximately one week later, Myer was called to Taylor's office. When she arrived, she blacked out and remembers only finding her-

_____

**2** The defendants included Theresa Crocker, individually and in her official capacity as Chief of Police for East Carolina University; John Taylor, individually and in his official capacity as Assistant Chief of Police for the East Carolina University Police Department; Mary Ann Rose, individually and in her official capacity as Director of Equal Opportunity Programs for East Carolina University; and East Carolina University. Subsequently, the claims against the individual defendants in their individual capacities and against Rose in her official capacity were dismissed and Thomas C. Younce, who had replaced Taylor as Assistant Chief of Police for the East Carolina University Police Department, was substituted for Taylor as a defendant.

self bent over a chair with her dress up and Taylor engaging in sexual intercourse with her. When she told Taylor that she was not using birth control, he withdrew. Myer then went to the bathroom to wash her face and told Taylor she had to leave. Taylor subsequently drove her home.

Allegations of sexual activity between Taylor and Myer first surfaced on June 22, 1995, when Myer's boyfriend, a Department patrolman, told ECU Police Lieutenant Stan Kittrell that Myer had informed him that she and Taylor had engaged in sexual intercourse. Kittrell informed Taylor of the allegation and the two had a meeting with Department Chief of Police Theresa Crocker. Taylor denied engaging in any sexual activity with Myer. Nevertheless, Crocker immediately contacted Mary Ann Rose, ECU's Director of Equal Opportunity Programs, and requested that she talk with Myer.

Myer told Rose of the above-described sexual activity with Taylor. Rose then interviewed Taylor, who again denied that the incidents ever occurred. At that time, Rose instructed Taylor not to contact Myer and requested that he use accumulated compensatory time to remain out of the workplace until further notice. Taylor complied with her request. Because Myer's and Taylor's stories were in conflict, Rose undertook an investigation in which she interviewed several witnesses, including Myer, multiple times. Taylor eventually resigned July 5, 1995, and Myer subsequently returned to work, continuing with the Department until she resigned in August 1996, some three months after her graduation from ECU.

Taylor had received training in equal employment opportunity law, including sexual harassment, when he was hired as Assistant Chief of Police of the Department. Additionally, at all times relevant to this case ECU had a statement of policy prohibiting sexual harassment which was posted at 75 locations on the ECU campus, including the Department. The posted policy stated that "making unwelcomed sexual advances" was against ECU policy. J.A. 502. It further instructed that any sexual harassment complaint should be reported to Rose and provided the location of her office and her phone number. Despite the existence of this policy, Myer did not report either incident with Taylor to Rose prior to the time Crocker contacted Myer.

4

Myer filed this suit on May 8, 1997, alleging, <u>inter alia</u>, claims of sexual harassment, sex discrimination constituting constructive discharge, and retaliation. On May 15, 1998, ECU, Crocker, and Assistant Chief of Police Thomas C. Younce (collectively,"Defendants"), moved for summary judgment. They subsequently moved without opposition for leave to amend their answer to add the affirmative defense to vicarious liability announced by the United States Supreme Court in <u>Burlington Industries, Inc. v. Ellerth</u>, 118 S. Ct. 2257 (1998), and <u>Faragher v. City of Boca Raton</u>, 118 S. Ct. 2275 (1998). In response to Defendants' summary judgment motion, Myer submitted affidavits stating, in pertinent part, that Rose had questioned Myer in a manner indicating that ECU had no interest in resolving the allegations against Taylor and that Myer had been treated as an outcast by her coworkers at the Department after making her allegations. Myer also contended that her hours of work had been reduced after the incidents.

Having received legal memoranda from all parties, the district court granted Defendants' motion to amend as well as their motion for summary judgment. The court concluded that Defendants had established an affirmative defense against vicarious liability for Taylor's alleged sexual harassment because ECU exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and Myer unreasonably failed to take advantage of the preventative or corrective opportunities that ECU provided to avoid harm from the harassment. The court determined that Myer's constructive discharge claim failed because Rose's actions were part of a legitimate investigation rather than a deliberate attempt to force Myer to resign, Myer's supervisors played no part in the cold treatment Myer allegedly received from her coworkers after her complaint, and in any case neither of these events caused Myer's resignation. Finally, the court concluded that Myer's retaliation claim failed because she had not suffered any adverse employment action as a result of her allegations against Taylor since her decrease in hours was due to the fact that the Department had employed a new full-time dispatcher.

II.

Having had the benefit of oral argument and the parties' briefs, and after careful consideration of the record and the applicable law, we

5

conclude that the district court correctly decided the issues before it. Accordingly, we affirm on the reasoning of the district court. <u>See</u> <u>Walton v. Younce</u>, No. 5:97-CV-367-BR2 (E.D.N.C. Jan. 27, 1999).

<u>AFFIRMED</u>

6